## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ONOFRIO POSITANO,** | : | **CIVIL NO. 1:CV-13-01521** |
| | : | |
| **Plaintiff** | : | **(Judge Rambo)** |
| | : | |
| **v.** | : | |
| | : | |
| **PENNSYLVANIA CARDIOTHORACIC** | : | |
| **SURGERY, INC., et al.,** | : | |
| | : | |
| **Defendants** | : | |

## M E M O R A N D U M

Plaintiff Onofrio Positano, a state inmate currently incarcerated at the State Correctional Facility at Mahanoy ("SCI-Mahanoy") in Frackville, Pennsylvania, initiated this action with a complaint filed in the Eastern District of Pennsylvania on May 31, 2013, followed by an amended complaint on February 27, 2014.  (*See* Doc. 63.)  The matter was transferred to this court on June 7, 2013.  (*See* Doc. 5.)  Named as Defendants are the Wilkes-Barre General Hospital ("WBGH"), the Pennsylvania Cardiothoracic Surgery, Inc. ("PCS"), and Michael D. Harostock, M.D.  In the amended complaint, Plaintiff claims that Defendants were deliberately indifferent to his serious medical needs in connection with bypass heart surgery performed at WBGH on June 2, 2011.  He also asserts state law claims of negligence and intentional infliction of emotional distress.

Presently before the court are two motions to dismiss, the first filed by WBGH (Doc. 67), the second by PCS and Dr. Harostock (Doc. 69).  For the reasons set forth below, both motions to dismiss will be granted.

## I.   <u>Background</u>

### A.   <u>Facts</u>

Plaintiff makes the following allegations in his amended complaint.  On June 2, 2011, Dr. Harostock performed a quadruple coronary bypass on Plaintiff at WBGH. (Doc. 63 ¶ 9.)  On approximately October 5, 2011, Plaintiff began to experience extreme chest pain.  (*Id.* ¶ 10.)  Upon inspection of his chest, Plaintiff noted "several bones and wires protruding from the area of the surgical incision."  (*Id.*)  He also could hear and feel "what he believed to be bones or cartilage snapping" when he bent over to cough or sneeze.  (*Id.*)

After making these observations, Plaintiff submitted a sick call request to see Dr. Lisick, SCI-Mahanoy's medical director, who subsequently examined him.  (*Id.* ¶¶ 11, 12.)  Dr. Lisick noted Plaintiff's protruding bones and observed that his sternum had reset overlapped and offsided.  (*Id.* ¶ 12.)  He also stated to Plaintiff, "I have never seen anything like this after surgery."  (*Id.*)  Finally, Dr. Lisick told Plaintiff that he would submit a consultation request for an examination by Dr. Harostock.  (*Id.*)

Three to four months later, Plaintiff was examined by Dr. Harostock.  (*Id.* ¶ 13.) Dr. Harostock noted the protruding bones and wires, but opined that it was Plaintiff's lack of body density that caused their appearance.  (*Id.*)  He asked to see Plaintiff again in six months but to notify him if the pain worsened beforehand.  (*Id.*)

Plaintiff's pain continued on an "almost daily basis."  (*Id.* ¶ 14.)  "Months later" Plaintiff was examined again by Dr. Harostock and a CT scan was ordered.  (*Id.* ¶ 15.) After Dr. Harostock reviewed the results of the CT scan, he informed Plaintiff that a second surgery was necessary.  (*Id.* ¶ 16.)

Sixteen months after the first surgery, Plaintiff had a second chest surgery.  (*Id.* ¶ 16.)  Plaintiff avers that, during this surgery, the wires were removed, his sternum was reset, and the protruding bones were cut off and sharp edges ground down.  (*Id.* ¶ 17.)  Since that surgery, Plaintiff still has the chest pain and hears snapping of bones and cartilage.  (*Id.* ¶ 18.)  Plaintiff avers that a recent examination has shown the probability that he will have to undergo another surgical procedure.  (*Id.*)

## B. **Procedural History**

Plaintiff originally filed the instant complaint in the United States District Court for the Eastern District of Pennsylvania.  (*See* Doc. 1, 3.)  The case was transferred to this court on June 7, 2013.  (Doc. 5.)  On July 29, 2013, the court directed service of the complaint on the Defendants named therein.  (Doc. 9.)

On August 23, 2013, Defendant WBGH filed a motion to dismiss. (Doc. 16.) A supporting brief followed on August 28, 2013. (Doc. 20.) On October 11, 2013, Defendants PCS and Dr. Harostock filed a motion to dismiss and brief in support. (Docs. 35 &36.) Rather than file a brief in opposition, Plaintiff filed a motion for leave to file an amended complaint. (Doc. 48.) By order dated February 28, 2014, the motion to amend the complaint was granted and Plaintiff's amended complaint was accepted for filing. (Doc. 64.) Further, the court deemed moot the motions to dismiss. (*Id*.)

On March 28, 2014, Defendant WBGH filed a motion to dismiss for lack of jurisdiction and for summary judgment. (Doc. 67.) On that same day, Defendants PCS and Dr. Harostock filed a motion to dismiss. (Doc. 69.) After responsive and reply briefing, these motions are now ripe for disposition.

Before addressing these motions, the court notes the following: On November 27, 2012, Plaintiff filed a civil medical malpractice action in the Court of Common Pleas of Luzerne County, Pennsylvania, by praecipe of writ of summons, naming WBGH, PCS and Dr. Harostock as Defendants. (*See* Doc. 20-1, Ex. A, Certified Luzerne County Docket Number 2012-16112, *Positano v. Wilkes-Barre General Hospital, et al.*) On December 31, 2012, Plaintiff filed a complaint in the Luzerne County court alleging medical malpractice and maleficence claims against all three Defendants. (*See* Doc. 20-2, Ex. B., Civil Cmpl., *Positano v. Wilkes-Barre General*

4

*Hospital*, No. 2012-16112.)  There is no dispute that the allegations contained therein are identical to those presented in the instant amended complaint before this court.

Defendants filed preliminary objections requesting dismissal for lack of service, and by order dated April 19, 2013, the Luzerne County court granted those objections and dismissed Plaintiff's complaint as to WBGH.  (*See* Doc. 20-3, Ex. 3, Order.)  Further, an amended and restated order was issued by the Luzerne County court on August 16, 2013, additionally dismissing Plaintiff's complaint as to PCS and Dr. Harostock.  (Doc. 35-2, Ex. B, Order.)  Thereafter, Plaintiff filed an appeal to the Superior Court of Pennsylvania.  (*See* Doc. 20-4, Ex. D, Docket of Pa. Super. Ct.*, Positano v. Wilkes-Barre General Hospital*, 875 MDA 2013.)  The Superior Court set a briefing schedule for Plaintiff, (*see* Doc. 35-3, Order), but Plaintiff instead sought leave to withdraw his appeal, (*see* Doc. 41 ¶ 1).  Plaintiff asserts that by order dated October 24, 2013, the Superior Court granted Plaintiff's request to withdraw his appeal and discontinued the appeal.[1]  (Doc. 41 ¶ 2.)  As such, Plaintiff's case in state court is no longer pending.

---

[1]  The court takes judicial notice of the Pennsylvania Superior Court's most recent docket entries in Plaintiff's appeal at 875 MDA 2013, and confirms Plaintiff's assertions with respect to withdrawal and discontinuance of his appeal.

## II.    Standard of Review[2]

Among other requirements, a sound complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Fair notice" in the context of Rule 8(a)(2) "depends on the type of case – some complaints will require at least some factual allegations to make out a showing that the pleader is entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (quotation omitted). "[A] situation may arise where, at some point, the factual detail in a complaint is so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8." *Id.* A plaintiff must provide more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" to show entitlement to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555) (recognizing that Rule 8 pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"); *accord*, *e.g.*, *Baraka v. McGreevey*,

---

[2] Because the court will grant the motions to dismiss based on Plaintiff's failure to state a claim against all Defendants, the court need not set forth the standard of review for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) or the standard of review for summary judgment.

481 F.3d 187, 195 (3d Cir. 2007) (stating that the court is not "compelled to accept

unsupported conclusions and unwarranted inferences or a legal conclusion couched as

a factual allegation.") (quotations and citations omitted).

A defendant may attack a complaint by a motion under Rule 12(b)(6) for failure

to state a claim upon which relief can be granted.  In deciding a motion to dismiss

under Rule 12(b)(6), the court is required to accept as true all of the factual allegations

in the complaint, *Erickson v. Pardus*, 551 U.S. 89, 93 (2007), and all reasonable

inferences permitted by the factual allegations, *Watson v. Abington Twp.*, 478 F.3d

144, 150 (3d Cir. 2007), and view them in the light most favorable to the plaintiff,

*Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007).  If the facts alleged are sufficient

to "raise a right to relief above the speculative level" such that the plaintiff's claim is

"plausible on its face," a complaint will survive a motion to dismiss.  *Iqbal*, 556 U.S.

at 663 (citing *Twombly*, 550 U.S. at 555, 570) (explaining a claim has "facial

plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged"); *see also*

*Phillips*, 515 F.3d at 234; *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007);

*Stevenson v. Carroll*, 495 F.3d 62, 66 (3d Cir. 2007).  Further, when a complaint

contains well-pleaded factual allegations, "a court should assume their veracity and

then determine whether they plausibly give rise to an entitlement to relief."  *Id*. at 664.

However, a court is "not bound to accept as true a legal conclusion couched as a

7

factual allegation." *Id*. at 678 (quoting *Twombly*, 550 U.S. at 555).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id*.

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted); *see also Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007).  The court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Benefit*, 998 F.2d at 1196. Additionally, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (citation omitted); *see also U.S. Express Lines, Ltd. v Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) ("Although a district court may not consider matters extraneous to the pleadings, a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." (internal quotation omitted)).  However, the court may not rely on other parts of the record in making its decision. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

8

When presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003); *Youse v. Carlucci*, 867 F. Supp. 317, 318 (E.D. Pa. 1994). Such a complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Finally, in the Third Circuit, a court must grant leave to amend before dismissing a civil rights complaint that is merely deficient. *See, e.g.*, *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007); *Weston v. Pennsylvania*, 251 F.3d 420, 428 (3d Cir. 2001); *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004).

## III.    Discussion

In the motions to dismiss, both sets of Defendants contend that Plaintiff has failed to state a claim against them because: (1) they are not state actors, and (2) they were not deliberately indifferent to Plaintiff's medical needs.[3]  Upon review, the court

---

[3] Both sets of Defendants set forth additional arguments in favor of dismissal; however, because the court agrees with Defendants that Plaintiff has failed to state an Eighth Amendment claim against them, we need not discuss the remaining arguments.

finds that, while there is a dispute as to whether Defendants are state actors, Plaintiff has failed to state an Eighth Amendment violation against Defendants.  Because Plaintiff has failed to state a federal claim against Defendants, the court will not retain supplemental jurisdiction over Plaintiff's pendant state law claims of negligence and intentional infliction of emotional distress.

## A.   <u>State Actors</u>

Plaintiff has brought this civil action, in part, under 42 U.S.C. § 1983.  Section 1983 provides, in pertinent part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  Section 1983 is not a source of substantive rights; rather, it is "a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 749 n.9 (1999).  To prevail in an action under Section 1983, a plaintiff must prove: (1) a violation of a right secured by the Constitution and the laws of the United States; and (2) that the alleged deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988).

10

In his amended complaint, Plaintiff claims that all Defendants deprived him of his Eighth Amendment right to be free from cruel and unusual punishment with respect to the treatment he received during and following his bypass surgery performed in 2011.  Plaintiff further avers that each Defendant has a contractual relationship with the Pennsylvania Department of Corrections ("DOC"), and therefore acted under color of state law.  (*See* Doc. 63 ¶¶ 5-8.)

In their motions to dismiss, Defendants WBGH, PCS, and Dr. Harostock argue that Plaintiff has failed to state a claim against them because they are private medical companies and a private actor, respectively.  Attached as an exhibit to Defendant WBGH's motion is an affidavit of Joan DeRocco, WBGH's Director, Patient Safety Services, which asserts that, during the time period of June 2011 through the present, no contract existed between WBGH and DOC to provide medical services to prisoners at SCI-Mahanoy.  (Doc. 67-4 at 2-3, DeRocco Aff.)  In the other motion to dismiss, PCS and Dr. Harostock assert that Dr. Harostock is private physician in the employ of PCS rather than the state, and that the state did not have any control over Dr. Harostock's actual performance of the heart surgery.  (Doc. 82 at 8-9.)

Plaintiff disputes Defendants' assertions.  In his brief in opposition, Plaintiff counters that each Defendant is, in fact, a state actor, and attaches an April 15, 2014 letter from Wexford Health Sources, Inc. (presumably the contracted health services

11

provider for SCI-Mahanoy), in support thereof.  (*See* Doc. 87 at 5.)  That letter reads,

in pertinent part, as follows:

> Wexford Health Sources, Inc. is in receipt of your Subpoena requesting
> contracts and/or agreements with the Commonwealth of Pennsylvania's
> Department of Corrections, Wilkes-Barre General Hospital, Pennsylvania
> Cardiothoracic Surgery, Inc., and Dr. Michael D. Harostock, M.D.
> Wexford Health *is in possession of documents responsive to this
> subpoena.*

(*Id*.) (emphasis added).  Further, in a August 28, 2014 letter addressed to the court,

Plaintiff states that he has "secured copies of the contracts for services with the Dept.

of Corrections' medical service providers which [he] required."  (Doc. 98 at 1.)

However, to date, Plaintiff has not submitted these alleged contracts in support of his

argument; rather, he simply states that they exist, and "avers he will supply these

documents *in camera* if the court so requires."  (Doc. 92 at 2.)

Upon review, the court notes the following.  Initially, the nature of the

relationship between Wexford Health Sources, Inc. and the Defendants is somewhat

unclear.  In addition, there is a dispute among the parties as to what Wexford meant

when it stated that it "is in possession of documents responsive to this subpoena."

(Doc. 87 at 5.)  While Defendants contend that Plaintiff cannot state with any degree

of certainty that a contract exists based solely on the letter from Wexford, Plaintiff

counters that he does, in fact, possess a copy of the contracts and is prepared to

provide them to the court for *in camera* review.  In light of this dispute, at this stage in

12

the litigation, the court will not grant the motions to dismiss on the basis that the

Defendants are not state actors.  Further, in light of this conclusion, for purposes of

disposition of the instant motions, the court will now turn to the merits of Plaintiff's

Eighth Amendment claim.

### B.    Eighth Amendment Claim

In order to establish an Eighth Amendment claim against a defendant for

inadequate medical care, a plaintiff must show "(i) a serious medical need, and (ii)

acts or omissions . . . that indicate deliberate indifference to that need." *Natale v.*

*Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003); *see also Rouse*, 182

F.3d at 197.  A serious medical need is one that has been diagnosed by a physician as

requiring treatment, or one that is so obvious that a layperson would recognize the

need for a doctor's attention.  *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834

F.2d 326, 347 (3d Cir. 1987).  In addition, "if 'unnecessary and wanton infliction of

pain' results as a consequence of denial or delay in the provision of adequate medical

care, the medical need is of the serious nature contemplated by the eighth

amendment."  *Id*. (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).

The test for whether a prison official was deliberately indifferent is whether that

defendant "acted or failed to act despite his knowledge of a substantial risk of serious

harm." *Farmer*, 511 U.S. at 841.  "The official must both be aware of the facts from

which the inference can be drawn that a substantial risk of serious harm exists, and he

13

must also draw the inference." *Id*. at 837.  Thus, a complaint that a physician "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle*, 429 U.S. at 106.

Further, an Eighth Amendment claim does not exist when an inmate is provided with medical care and the dispute is over the adequacy of that care.  *Nottingham v. Peoria*, 709 F. Supp. 542, 547 (M.D. Pa. 1988).  Mere disagreement as to the proper medical treatment does not support an Eighth Amendment claim.  *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987).  Only flagrantly egregious acts or omissions can violate the standard.  Medical negligence alone cannot result in an Eighth Amendment violation, nor can any disagreements over the professional judgment of a health care provider.  *White v. Napolean*, 897 F.2d 103, 108-10 (3d Cir. 1990); s*ee also Estelle*, 429 U.S. at 105-06 (holding that medical malpractice is insufficient basis upon which to establish an Eighth Amendment violation); *Rouse*, 182 F.3d at 197 ("It is well-settled that claims of negligence and medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.'"); *Lanzaro*, 834 F.2d at 346 (concluding that mere allegations of malpractice do not raise issues of constitutional import).

In his amended complaint, Plaintiff alleges that, four months after Dr. Harostock performed a quadruple coronary bypass at WBGH on June 2, 2011,

14

Plaintiff began to experience extreme chest pain due to "several bones and wires protruding from the area of the surgical incision." (Doc. 63 ¶ 10.)  Upon examination by SCI-Mahanoy's medical director, Plaintiff was scheduled for a consultation with Dr. Harostock.  Upon his examination of Plaintiff, Dr. Harostock opined that Plaintiff's lack of bone density was causing the abnormal appearance of Plaintiff's chest, and asked to see Plaintiff again in six months.  He also asked Plaintiff to notify him before that appointment if the pain worsened.  Plaintiff avers that he was examined again by Dr. Harostock "months later" and that a CT scan was ordered.  (*Id.* ¶ 15.)  After Dr. Harostock reviewed the results of the CT scan, he informed Plaintiff that a second surgery was necessary.  Plaintiff had that surgery, where the wires were removed, his sternum reset, and the protruding bones were cut off and sharp edges ground down.  Unfortunately, since that second surgery, Plaintiff avers that he continues to suffer chest pain.

Upon review, these allegations in the amended complaint demonstrate that the Defendants were not deliberately indifferent to Plaintiff's medical needs in connection with his bypass surgery.  Rather, Plaintiff was provided with medical attention by both SCI-Mahanoy medical staff and outside medical providers.  When Plaintiff experienced pain after the June 2011 surgery, he was seen by SCI-Mahanoy medical staff for that pain, and subsequently scheduled for further evaluation by Dr. Harostock.  Dr. Harostock examined Plaintiff and ordered tests.  In addition, he

performed a second surgery after reviewing the results of those tests.  Unfortunately, despite this medical attention, Plaintiff continued to suffer pain and discomfort.  This is clearly a case where Plaintiff was given medical attention but is dissatisfied with the course of treatment and subsequent results.  As stated above, an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference.  *Durmer*, 991 F.2d at 69; *Spruill*, 372 F.3d at 235.  Thus, Plaintiff has failed to establish an Eighth Amendment violation with respect to his June 2011 bypass surgery and subsequent medical care.  Rather, Plaintiff's claim against these Defendants, at best, states a negligence action which Plaintiff may institute against Defendants in state court, as a § 1983 action is not the appropriate action or venue for Plaintiff's negligence claim he has attempted to raise on the grounds of a constitutional violation.  Since the well-pleaded facts fail to establish an actionable constitutional violation, amendment would be futile.  *See Fletcher-Harlee Corp.*, 482 F.3d at 252.

  **C.**    **State Law Claims**

  Pursuant to 28 U.S.C. § 1367(c)(3), a district court "may decline to exercise supplemental jurisdiction over a claim" if, *inter alia*, "the district court has dismissed all claims over which is has original jurisdiction."  The decision concerning the exercise of supplemental jurisdiction is left to the sound discretion of the district court.  *See Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995) (citing

*United Mine Workers v. Gibbs*, 383 U.S. 715, 726-27 (1966)).  Additionally, when the

claim is dismissed by the district court prior to trial pursuant to a provision such as §

1367(c)(3), "the district court must decline to decide the pendant state claims unless

considerations of judicial economy, convenience, and fairness to the parties provide

an affirmative justification for doing so."  *Id*. (citing *Lovell Mfg. v. Export-Import*

*Bank of the United States*, 843 F.2d 725, 732 (3d Cir. 1988); *Growth Horizons, Inc. v.*

*Delaware Cnty.*, 983 F.2d 1277, 1284 (3d Cir. 1993)).  The Third Circuit has also

noted that a district court should decline jurisdiction over such claims "where the

federal claims are no longer viable, absent extraordinary circumstances."  *Shaffer v.*

*Bd. of Sch. Dirs. of Albert Gallatin Area Sch. Dist.*, 730 F.2d 910, 912 (3d Cir. 1984)

(citing *Weaver v. Marine Bank*, 683 F.2d 744, 746 (3d Cir. 1982) (internal quotations

omitted)).

Here, the court finds that no extraordinary circumstances exist to justify

maintaining jurisdiction over Plaintiff's pendant state law claims against the

Defendants.  Since the court has determined that Plaintiff's federal claim fails and,

therefore, will grant the motions to dismiss the amended complaint, the court will

decline to exercise supplemental jurisdiction over Plaintiff's remaining state law

claims.  As a result, Plaintiff's claims of negligence and intentional infliction of

emotional distress will be dismissed in this proceeding.

## IV.    **Conclusion**

For the reasons set forth herein, both motions to dismiss will be granted.  In addition, Plaintiff will not be permitted to file an amended complaint.  Further, Plaintiff's pendant state law claims will be dismissed.  An appropriate order will issue.

s/Sylvia H. Rambo
United States District Judge

Dated:  December 2, 2014.